529 So.2d 293 (1988)
Alphonso CAVE, Appellant,
v.
STATE of Florida, Appellee.
No. 72637.
Supreme Court of Florida.
July 1, 1988.
*294 Bruce M. Wilkinson, Stuart, and Andres Valdespino, New York City, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard G. Bartmon, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
The appellant is a Florida prisoner who was convicted of first-degree murder, armed robbery, and kidnapping and, consistent with the jury recommendation, sentenced *295 to death. We affirmed in Cave v. State, 476 So.2d 180 (Fla. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986). A death warrant has been signed and execution set for the week beginning July 6, 1988. Appellant petitioned the trial court for post-conviction relief under Florida Rule of Criminal Procedure 3.850. He now appeals the denial of relief and asks for a stay of his execution. We have jurisdiction, article V, section 3(b)(1), Florida Constitution. We affirm the denial of rule 3.850 relief and deny the petition for a stay.
Appellant presented twelve claims to the trial court: (1) the state improperly threatened additional charges if he invoked his constitutional right to testify; (2) he did not receive effective assistance of trial counsel; (3) the state improperly suggested to the jury, contrary to the evidence, that he was the actual killer of the victim; (4) the trial court improperly refused to allow questioning of the jurors following the advisory sentence; (5) the trial court improperly excluded prospective jurors in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); (6) the trial court improperly admitted into evidence portions of a codefendant's statement; (7) the trial court improperly admitted his confession; (8) the trial court improperly denied jury instructions requested by him; (9) the trial court improperly instructed the jury on the advisory sentence; (10) the state and court improperly diminished the role and responsibility of the jury with respect to the advisory sentence; (11) the imposition of the death penalty was improper because the crime was not committed for pecuniary gain and was not heinous, wicked and cruel; and (12) the imposition of the death penalty violated Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).
The trial court found that eleven of these claims were procedurally barred and that only claim two, ineffective assistance of trial counsel, was cognizable under rule 3.850. By its own terms, rule 3.850 provides that it
does not authorize relief based upon grounds which could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.
We agree with the trial court that these eleven claims were cognizable only on direct appeal and, indeed, eight of them were presented and disposed of on direct appeal. Cave. Although all eleven are procedurally barred, claims three and ten merit additional comment. Concerning claim three, appellant alleges that the prosecution in its closing argument during the guilt phase improperly argued to the jury that he was the actual killer ("shooter") of the victim even though it argued in the separate, individual trials of his three cohorts that each of them was the actual killer. Appellant urges that such argument was inconsistent with the evidence and inconsistent with professional ethics and the prosecutor's responsibility to provide a fair trial. Moreover, appellant urges, such prosecutorial misconduct could only be discovered after all four trials were conducted and appellate counsel could not be expected to raise, or even be aware of, this issue on direct appeal. Whatever merit this argument might have in a hypothetical case, and we express no opinion on the question, it has no merit under the facts of this case. Appellant was one of four defendants who were convicted in separate trials of first-degree felony murder in the robbery, abduction, and murder of a convenience store clerk. During the state's closing argument, the prosecutor made the following statement to the jury:

And I submit to you that regardless of whether Alphonso Cave pulled the trigger or used the knife, he's just as guilty as who did, as who did [sic]. He was there. He was involved. And the only statement you have that he didn't pull the trigger was his own self-serving statement, that after he heard Bush's statement implicating him "I better make the best possible statement now on my own behalf." He's the only one at that point that tells you he didn't pull the trigger.
Who had the gun from the beginning? Alphonso Cave. Who had the gun in the *296 store: Alphonso Cave. Who put her in the back seat? Alphonso Cave. Who took her out of the back seat? Alphonso Cave. Who had the gun? And who was outside with Frances Slater? Alphonso Cave. (Emphasis added.)
In his presentation to this Court, appellant omits the underlined portion above and represents that the remainder of the quote is a deliberate mischaracterization by the prosecutor of the known facts which was intended to improperly prejudice the jury in its later deliberations on the advisory sentence. We disagree. First, the mischaracterization appears to be in appellant's highly selective editing of the statement. Second, the statement taken in full and in context does not argue to the jury that Cave should be found guilty because he was the actual "shooter." It argues exactly the opposite: Cave should be found guilty because he was a full participant in a felony murder regardless of which of the four participants did the actual shooting. This is made abundantly clear when the prosecutor's full closing argument is considered. Throughout the argument, before and after the above quote, the prosecutor repeatedly stressed to the jury its duty to follow the law on felony murder that all participants in the underlying felony are equally guilty of any murder that occurs, even accidentally, regardless of who did the actual killing. Under the evidence adduced in this case, and the state could not properly argue on evidence adduced in other trials, it was not clear who did the shooting. The last thing the state wanted the jury to believe was that the state had the burden of showing that Cave was the actual killer. Indeed, the state's emphasis on the irrelevancy of the question was in response to defense counsel's repeated misstatements of the law on felony murder in her closing argument.[1] There is no merit in appellant's argument of prosecutorial misconduct nor that the issue is not procedurally barred.
On claim ten, appellant argues that the jury's role was improperly denigrated in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), and that this claim is not procedurally barred because Caldwell represents a change in law occurring since trial and direct appeal. We begin by noting that Caldwell was decided June 11, 1985, that our Cave decision on direct appeal was not issued until August 30, 1985, and did not become final until October 21, 1985, and that the United States Supreme Court did not deny certiorari until June 9, 1986. In view of this chronology, Caldwell does not represent new law to this case whatever its applicability may be otherwise. Second, we have previously held that Caldwell is distinguishable from the Florida procedure which treats the jury's recommendation as advisory only and places the responsibility for sentencing on the trial judge. Advising the jury that its sentencing recommendation is advisory only is an accurate statement of Florida law. Combs v. State, 525 So.2d 853 (Fla. 1988); Grossman v. State, 525 So.2d 833 (Fla. 1988). Third, we have previously held that Caldwell does "not represent a sufficient change in the law to overcome a procedural bar," Demps v. State, 515 So.2d 196, 197 (Fla. 1987). See also, Doyle v. State, 526 So.2d 909 (Fla. 1988); Mitchell v. State, 527 So.2d 179 (Fla. 1988); Tafero v. Dugger, 520 So.2d 287 (Fla. 1988); Phillips v. Dugger, 515 So.2d 227 (Fla. 1987). The claim here is procedurally barred. Appellant nevertheless argues that the United States Court of Appeals for the Eleventh Circuit has taken a contrary view of Caldwell and that we should stay the execution here until the Supreme Court completes its review of Adams v. Dugger, 804 F.2d 1526 (11th Cir.1986), modified, 816 F.2d 1493 (11th Cir.1987), cert. granted, ___ U.S. ___, 108 S.Ct. 1106, 99 L.Ed.2d 267 (1988). We decline to do so. Even if we were inclined to adopt the Eleventh Circuit's contrary reading of Florida law, the jury here was told clearly by the trial judge, the prosecutor, and defense counsel that its recommendation was entitled *297 to great weight and was a critical part of the capital sentencing process. There was no denigration of the jury role such as that referred to in Mann v. Dugger, 844 F.2d 1446 (11th Cir.1988). Under the circumstances here, even the Eleventh Circuit reading of Florida law recognizes that the jury has not been misled or its sense of responsibility diminished. Stewart v. Dugger, 847 F.2d 1486 (11th Cir.1988); Harich v. Dugger, 844 F.2d 1464 (11th Cir.1988).
We turn now to appellant's claim of ineffective trial counsel. Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claimant asserting ineffective counsel faces a heavy burden. He must first identify the specific omission and show that counsel's performance falls outside the wide range of reasonable assistance. In determining whether this has occurred, courts must eliminate the distorting effects of hindsight by evaluating the performance from counsel's perspective at the time and must grant a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The burden is on the claimant to show that counsel was ineffective. Having demonstrated inadequate performance, the claimant must then show an adverse effect so severe that there is a reasonable probability that the results would have been different except for the inadequate performance.
Appellant first asserts that counsel's performance during the guilt phase was constitutionally ineffective. We need not tarry over this claim. Appellant gave a detailed confession of the armed robbery, kidnapping, and murder of the victim. The only denial was that he did not personally kill the victim which was irrelevant to the charge. This confession was corroborated by substantial evidence. Even if we were to agree that counsel's performance was inadequate, which we do not, there is no showing of a reasonable probability that the performance contributed to the conviction.
Appellant next argues that counsel's performance during the penalty phase was constitutionally ineffective. The trial court found three aggravating circumstances: (1) murder committed during robbery and kidnapping; (2) murder was especially heinous, atrocious, and cruel; and (3) murder was committed for the purpose of avoiding lawful arrest.[2] No witnesses were presented in mitigation and no mitigation was found by the trial judge. Appellant argues first that trial counsel was ineffective in failing to obtain character witnesses who would have testified favorably on Cave's character, thus "humanizing" him before the jury. In support, appellant produced relatives and friends who testified at the evidentiary hearing below that they would have testified at trial on Cave's good character had they been asked. In contradiction, trial counsel testified that Cave's mother adamantly refused to testify, to provide the names of other possible witnesses, or to be involved in the defense. The only other potential witnesses, whose names were given to her by Cave, were unable to testify for medical reasons. Trial counsel also testified that she knew well the importance of such character witnesses and had directed an appointed investigator to find such witnesses as were available. This investigator was not called by appellant and, after a lapse of six years, trial counsel was unable to recall what the investigator efforts entailed or the result they produced. We have no way of judging the credibility of these witnesses' contradictory accounts, but do note the following from the record. The mother agreed she had met with trial counsel twice but denied she was asked to testify. We have no way of resolving this conflict in testimony, but the burden of proof at this stage rests upon the petitioner. Further, the mother also testified that she did not attend the trial because counsel did not ask her to, which certainly suggests either a lack of interest or a desire not to be linked to Cave. (The mother's name is different from her son's.) Cave's sister, who said she would have testified had she been asked, did not attend the trial and did not *298 know that a change of venue had been granted or where the trial was held. She also testified that she and her mother never discussed the trial as it took place. The two witnesses who could not testify for medical reasons had a landlord/tenant relationship with appellant which was apparently not very close and had existed for only a year. Other witnesses were neighbors and the relationships appeared to be remote in time and not particularly close. Under cross examination these witnesses did not display a great deal of knowledge about appellant's activities and, generally, testified in an unimpressive manner. Even if we were to agree that counsel's performance was inadequate in not obtaining the testimony of these witnesses, appellant has not shown that there is a reasonable probability that their character evidence would have produced a different result. Strickland.
In a related point, appellant argues that trial counsel should have requested a continuance between the guilt and penalty phases in order to attempt to obtain character witnesses. In support, appellant produced a public defender who testified that his office always sought continuances after the guilt phase. This questionable practice does not establish the acceptable norm. Trial counsel testified that she had no valid reason for seeking a continuance in view of the reluctance of prospective witnesses. We see no error in this exercise of professional judgment.
Appellant also argues that counsel was ineffective for failing to seek a jury instruction that appellant had no significant history of prior criminal activity. The trial record shows, and counsel so testified at the evidentiary hearing below, that she initially intended to seek such an instruction but withdrew it when the trial judge made an adverse ruling on the type of evidence which the state could introduce to refute the factor if the instruction was given. Counsel was of the opinion that the introduction of the state's rebuttal evidence would, on balance, harm appellant's case. This was a reasonable decision by trial counsel.
Appellant also argues a series of points that merit little comment: (1) counsel should have put appellant on the stand during the penalty phase; (2) counsel should have rigorously cross examined the medical examiner during the guilt phase when he testified that the victim emptied her bladder out of fear prior to being killed; and (3) counsel should have obtained additional examinations of appellant by expert psychologists in order to develop mitigation. On point one, counsel testified that appellant performed so poorly when testifying at the pretrial suppression hearing that she ruled out having him take the stand before the jury. On point two, counsel testified that in the preceding trial of one of appellant's cohorts, the defendant's counsel obtained a concession by the medical examiner that bladders may empty for reasons other than fear, but that the state, on redirect, obtained testimony that the most likely reason for a completely emptied bladder was fear.[3] Trial counsel testified she did not want a recurrence at appellant's trial or to prolong the time that the jury heard testimony on the victim's emptied bladder. This was an application of the well-known rule that counsel should not highlight adverse evidence for the jury. On point three, trial counsel testified that she obtained two confidential examinations by defense oriented psychologists and their reports were so negative that she chose not to pursue the question because the state would be able to obtain the reports and depose and cross examine the experts if she did so. We find counsel's decisions on all three points to be a reasonable exercise of professional judgment. Further, appellant has not shown a reasonable probability that these decisions affected the final result. Strickland.
Appellant presents one additional point. Under rule 3.850, appellant's conviction *299 and sentence became final in early June 1986, when the United States Supreme Court denied certiorari review of Cave, our affirmance on direct appeal. Burr v. State, 518 So.2d 903 (Fla. 1987). Rule 3.850 prescribes a two-year period following final conviction for filing petitions for post-conviction relief, after which such petitions are procedurally barred. The Governor signed a death warrant on appellant on April 27, 1988, providing for execution during the week of July 6, 1988. Under these circumstances, Florida Rule of Criminal Procedure 3.851 requires that any post-conviction petitions be filed within thirty days of the signing of the warrant. Appellant filed his petition on May 27, 1988, which, he now claims, shortened by thirteen days his asserted right to a two-year period under rule 3.850. Essentially, appellant is claiming that procedural rule 3.850 prohibits the Governor of Florida from signing a death warrant until two years after a death sentence becomes final. This issue was not presented below and is procedurally barred. Moreover, this Court has no constitutional authority to abrogate the Governor's authority to issue death warrants on death sentenced prisoners whose convictions are final. Unless there is a petition for post-conviction relief, the affirmance of a final conviction ends the role of the courts. Rule 3.850 merely provides a time period after which petitions may not be filed. It does not act as a bar to execution of sentences immediately after they become final.
We affirm the decision below and deny the request for a stay of execution and all other relief.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only.
NO MOTION FOR REHEARING WILL BE ENTERTAINED BY THE COURT.
NOTES
[1] After repeated objections to defense counsel's misstatements of law were upheld, the trial judge required that counsel proffer the argument outside the presence of the jury. Cave, 476 So.2d at 186.
[2] Respectively, subsections (d), (h), and (e) of § 921.141(5), Fla. Stat. (1981).
[3] Trial counsel testified that she and counsel for the three cohorts met frequently to compare notes on the separate prosecutions.