619 So.2d 246 (1993)
Raymond Leon KOON, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
Raymond Leon Koon, Appellant,
v.
State of Florida, Appellee.
Nos. 74245, 75380.
Supreme Court of Florida.
March 25, 1993.
Rehearing Denied June 9, 1993.
*247 Larry Helm Spalding, Capital Collateral Representative, Martin J. McClain, Chief Asst. CCR and Ken D. Driggs, Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen. and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for respondent/appellee.
PER CURIAM.
Raymond Leon Koon, a prisoner under sentence of death, appeals the denial of his motion for postconviction relief. He also petitions the Court for a writ of habeas corpus. We have jurisdiction pursuant to article V, sections 3(b)(1) and (9), Florida Constitution.
Koon was convicted and sentenced to death for the 1979 murder of Joseph Dino. Dino was murdered after he implicated Koon in a counterfeiting conspiracy and agreed to testify against him. On direct appeal, this Court reversed Koon's conviction because of trial error and remanded for a new trial. Koon v. State, 463 So.2d 201 (Fla.), cert. denied, 472 U.S. 1031, 105 S.Ct. 3511, 87 L.Ed.2d 641 (1985). On retrial, Koon was again convicted. The jury recommended death by a seven-to-five vote, and the trial court sentenced Koon to death. This Court affirmed the conviction and sentence.[1]Koon v. State, 513 So.2d 1253 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1124, 99 L.Ed.2d 284 (1988). Koon filed this habeas petition and postconviction motion after the governor signed a warrant for his death. The trial court ruled that many of the claims in his postconviction motion were procedurally barred. However, the court held an evidentiary hearing on (1) whether Koon was prejudiced by not having an adequate psychiatric examination to disclose his alleged incompetency to stand trial; (2) whether Koon was, in fact, incompetent to stand trial; and (3) whether his trial counsel rendered ineffective assistance. Following the evidentiary hearing, the court denied the balance of Koon's claims.
Koon raises numerous claims in the appeal of the denial of his 3.850 motion.[2] Most of the claims are procedurally barred because they either were raised or should have been raised on direct appeal. Buenoano v. Dugger, 559 So.2d 1116, 1118 (Fla. 1990); Harich v. State, 484 So.2d 1239, 1240 (Fla. 1986). The procedurally barred claims include: (1) the trial judge relied on a nonrecord report in sentencing (raised on direct appeal); (2) the court improperly applied the aggravating circumstance of hindering the role of law enforcement (raised on direct appeal); (3) the court refused to find mitigating circumstances established in the record (raised on direct appeal); (4) the court failed to independently weigh aggravating and mitigating circumstances (raised on direct appeal); (5) the participation of federal agents in the state's case after they successfully prosecuted him on federal charges violated double jeopardy (raised on the first direct appeal); (6) Koon was denied the right to be present at a critical stage of the proceeding; (7) security precautions taken at trial prejudiced Koon; (8) the trial court erred in refusing to grant a change of venue; (9) the failure to instruct the jury on the nonstatutory mitigating circumstance of disparate treatment violated Koon's constitutional rights; (10) the jury was misled by instructions and *248 arguments that diluted its responsibility for sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (11) the state introduced nonstatutory aggravating factors; (12) the prosecutor made improper comments regarding mercy and sympathy toward Koon; (13) the jury instructions shifted the burden to Koon to prove that life was the appropriate penalty; (14) the jury was misled by the instruction that a recommendation of life must be made by a majority vote; (15) Koon was denied the right to counsel because his attorney had a conflict of interest; (16) this Court's interpretation of the aggravating factor of cold, calculated, and premeditated is unconstitutionally overbroad (application of this factor to this case was raised on direct appeal).
Koon's claim that the jury was improperly instructed on the aggravating factor of heinous, atrocious, and cruel is also procedurally barred. Koon correctly points out that his jury was given the same instruction on this aggravating factor that the United States Supreme Court recently held to be unconstitutionally vague. Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). However, there was never any objection to the wording of the instruction. Furthermore, while Koon questioned the applicability of this aggravating factor on appeal, he did not argue that the language of the instruction was improper or vague. See Kennedy v. Singletary, 602 So.2d 1285 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992).
Upon our review of the record, we summarily reject the claims of ineffective assistance of trial counsel that Koon raises with respect to these claims. Even assuming the performance to be deficient, we find no evidence that the outcome of the proceedings was prejudiced.
Koon claims that his trial counsel failed to investigate and present mental health defenses and mitigation in all phases of the trial. With respect to the guilt phase, Koon asserts that counsel should have presented a voluntary intoxication defense in order to negate the specific intent to commit premeditated murder. To warrant relief on this claim, Koon must demonstrate deficient performance and prejudice. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Assistant Public Defender Thomas O'Steen was appointed to represent Koon in May 1982, prior to the first trial. Shortly before trial, Koon retained private counsel and O'Steen withdrew. Koon's new counsel obtained an order appointing three psychiatrists to evaluate Koon's competency. One of the psychiatrists, Dr. Wald, interviewed Koon and requested an electroencephalogram (EEG), a CT scan of the brain, and psychological testing on Koon. Dr. Ertag performed an EEG and CT scan.[3] He reported that the EEG was within normal limits and that the CT scan indicated some mild frontal atrophy, consistent with chronic alcohol ingestion. Ertag diagnosed Koon as having mild organic deficits, including decreased recent memory, a slight decrease of insight in judgment, and limited abstract thought (the latter was possibly due to limited education). He found no significant permanent impairment of mental function, but noted that the organic brain syndrome could have been more severe around the time of the crime if Koon was continuously under the influence of alcohol and had poor nutrition.
Dr. Wald filed his report after receiving the results of Dr. Ertag's testing. He diagnosed Koon as suffering from alcoholism and possible mild organic brain syndrome. He noted that the minimal degree of atrophy shown by the CT scan would probably not be significant in determining Koon's behavior. The two other appointed psychiatrists diagnosed Koon as suffering from chronic alcoholism. All the doctors who examined Koon found him competent to stand trial.
After this Court reversed the conviction, O'Steen was appointed to represent Koon on retrial. Koon argues that in light of the 1982 psychiatric reports indicating that he suffered from chronic alcoholism and brain *249 damage, O'Steen should have obtained a mental health expert to pursue a voluntary intoxication defense.
Koon has failed to establish that counsel's performance was deficient. According to O'Steen's testimony below, he reviewed the 1982 psychiatric reports and discussed the case with Dr. Wald prior to trial. O'Steen testified that he and Koon discussed the possibility of a voluntary intoxication defense to negate specific intent and thus reduce the crime to second-degree murder. However, Koon insisted on pursuing a verdict of not guilty. Koon maintained that he was innocent and that he was at home asleep at the time of the murder. O'Steen testified that although his preference would have been to pursue voluntary intoxication as the primary defense, under the circumstances, he felt that the defense of innocence was equally viable. O'Steen testified that his experience had been that juries did not look favorably on the voluntary intoxication defense. Although he considered the possibility that Koon was in an alcoholic blackout at the time of the murder, that was inconsistent with Koon's detailed testimony of where he was and what he did at all times on the day of the murder. Moreover, although O'Steen did not present voluntary intoxication as the primary defense, he presented evidence that Koon was a chronic alcoholic and that he was intoxicated at the time of the murder. The jury was instructed on voluntary intoxication. Based on these facts, O'Steen's decision not to pursue a voluntary intoxication defense was a reasonable trial tactic predicated on his experience, his assessment of the case, and Koon's expressed desires.
With respect to the penalty phase, Koon argues that O'Steen failed to investigate and present significant mental health mitigation that would have resulted in a life recommendation from the jury. In a related claim, Koon argues that counsel failed to develop and present evidence of his impoverished childhood, his military service, his alcoholism, and other nonstatutory mitigation.
O'Steen did not present any penalty phase testimony or evidence because Koon instructed him not to do so. O'Steen testified below that Koon's position all along was that he did not want to spend the rest of his life in prison. O'Steen also testified that he was afraid that if he attempted to present witnesses against Koon's wishes, Koon would make a scene in front of the jury.
O'Steen's testimony that Koon prohibited him from presenting mitigation is unrebutted.[4] We have repeatedly recognized the right of a competent defendant to waive presentation of mitigating evidence. Pettit v. State, 591 So.2d 618 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 110, 121 L.Ed.2d 68 (1992); Hamblen v. State, 527 So.2d 800, 804 (Fla. 1988). However, Koon relies on the recent case of Blanco v. Singletary, 943 F.2d 1477 (11th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 2282, 119 L.Ed.2d 207 (1992), and cert. denied, ___ U.S. ___, 112 S.Ct. 2290, 119 L.Ed.2d 213 (1992), to argue that counsel erred in following his instruction.
In Blanco, the court granted habeas relief on Blanco's claim that his trial counsel rendered ineffective assistance, in part, by not presenting available mitigating evidence at the penalty phase. Blanco's defense counsel conducted no investigation into possible mitigating evidence until the conclusion of the guilt phase of trial. After the jury returned a guilty verdict, Blanco told counsel that he did not wish to present witnesses in the penalty phase. The court rejected the argument that Blanco's instruction controlled the issue, noting that counsel may not blindly follow such commands. Rather, counsel "`first must evaluate potential avenues and advise the client of those offering potential merit.'" Id. at 1502 (quoting Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir.1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987)). The court found counsel to be ineffective because:
[t]he ultimate decision that was reached not to call witnesses was not a result of *250 investigation and evaluation, but was instead primarily a result of counsels' eagerness to latch onto Blanco's statements that he did not want any witnesses called. Indeed, this case points up an additional danger of waiting until after a guilty verdict to prepare a case in mitigation of the death penalty: Attorneys risk that both they and their client will mentally throw in the towel and lose the willpower to prepare a convincing case in favor of a life sentence.
Blanco, 943 F.2d at 1503.
In contrast to Blanco, this is not a situation in which counsel "latched onto" the defendant's instruction and failed to investigate penalty phase matters. O'Steen investigated potential mitigating evidence before trial. He reviewed the 1982 psychiatric reports and talked with Dr. Wald regarding guilt and penalty phase issues. In addition, O'Steen knew about Koon's family history, his background, and his chronic alcoholism. O'Steen testified that he talked with Koon about presenting penalty phase witnesses. Although O'Steen did not present penalty phase testimony, he argued the existence of mitigating factors based upon testimony presented in the guilt phase. O'Steen argued that Koon lacked the capacity to conform his conduct to law due to his intoxication; that Koon was a good father, a good provider, and a hard worker; and that Koon was generous toward his friends. Under these facts, we find no error in O'Steen following Koon's instruction not to present evidence in the penalty phase.
Although we find that no error occurred here, we are concerned with the problems inherent in a trial record that does not adequately reflect a defendant's waiver of his right to present any mitigating evidence. Accordingly, we establish the following prospective rule to be applied in such a situation. When a defendant, against his counsel's advice, refuses to permit the presentation of mitigating evidence in the penalty phase, counsel must inform the court on the record of the defendant's decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence.
In his next claim, Koon argues that his competency should have been reevaluated upon retrial, that he was incompetent at the time of the retrial, and that counsel was ineffective for failing to seek a new competency evaluation. We find nothing in the record that would have made it reasonably necessary for the court to inquire into Koon's competency at the time of his 1985 retrial. Christopher v. State, 416 So.2d 450, 452-53 (Fla. 1982). Although Koon was a difficult client who was prone to courtroom outbursts and who openly displayed displeasure with his counsel, nothing in the record suggests that he lacked the ability to consult with his attorney or that he lacked a factual understanding of the proceeding against him. In addition, O'Steen testified below that he had no concerns about Koon's competency given his own observations and the prior findings of competency. Although defense witness Dr. Albrecht testified at the evidentiary hearing that Koon was incompetent at the time of the 1985 trial, state witness Dr. Mutter reached the opposite conclusion. Thus, there is adequate evidence in the record to support the trial court's rejection of this claim.
Next, Koon claims that his trial counsel abdicated the decision-making authority to him without an appropriate Faretta[5] inquiry. This claim centers around Koon's demand during trial that counsel recall a witness and ask him certain questions that he had not asked during the witness's initial testimony. Defense counsel advised the court that Koon insisted on recalling the witness.
Faretta requires that when a defendant asserts his right of self-representation, the *251 court must conduct an appropriate inquiry to determine that the waiver of the right to counsel is voluntarily and intelligently made. Here, Koon clearly indicated that he did not wish to represent himself. No Faretta inquiry was required. The trial and postconviction record reflect that Koon was a difficult client who insisted, at times, on preempting his counsel's trial strategy. Koon informed the court that he would do whatever it took to have this witness recalled and requestioned. In an effort to prevent Koon from making a scene in front of the jury, counsel conceded to Koon's demand to recall this witness. This was a reasonable response under the circumstances and did not constitute an abdication of the decision-making authority.
There was sufficient evidence in the record to support the court's denial of the balance of Koon's ineffective assistance of counsel claims under the standards of Strickland v. Washington.
Finally, Koon claims that the application of Florida Rule of Criminal Procedure 3.851 to this case is unconstitutional. He argues that the governor's signing of the death warrant had the effect of shortening the time available for him to seek postconviction relief under rule 3.850. We rejected this argument in Cave v. State, 529 So.2d 293, 298-99 (Fla. 1988).
Accordingly, we affirm the denial of postconviction relief and deny the petition for writ of habeas corpus.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., concurs specially with an opinion, in which KOGAN, J., concurs.
BARKETT, Chief Justice, specially concurring.
I concur with the majority subject to the views I expressed in Hamblen v. State, 527 So.2d 800, 806-809 (Fla. 1988) (Barkett, J., dissenting). I continue to believe that, in any case where the defendant waives the right to present mitigation, independent public counsel should be appointed to present whatever mitigating evidence can be reasonably discovered under the circumstances in order to ensure a reliable and proportionate sentence.
I also agree that Cave v. State, 529 So.2d 293, 298-99 (Fla. 1988), controls regarding the effect of the governor's signing of a death warrant when it shortens the time available to seek postconviction relief under rule 3.850. However, Cave should be overruled on this issue because of the discriminatory treatment of death-sentenced defendants under the current warrant system.
Rule 3.850 provides that a defendant has two years from the date the conviction becomes final to file for postconviction relief. The signing of the death warrant before the two-year period has expired clearly truncates the time limitations established by this rule. See Fla.R.Crim.P. 3.851 (requiring all motions and petitions for postconviction relief be filed within thirty days of the date the warrant was signed). This is unfair and unequal treatment of capital defendants, as well as a denial of such defendants' right to due process. See Bundy v. State, 490 So.2d 1257, 1257-58 (Fla. 1986) (Barkett, J., dissenting). It is an absurd anomaly that defendants convicted of comparatively minor crimes have the full period granted under the rule in which to file for relief, whereas capital defendants facing the ultimate penalty, whose cases often involve detailed investigations and complex legal issues, can be substantially deprived of the two years which the rule gives them simply by the signing of their death warrant.
KOGAN, J., concurs.
NOTES
[1] We approved the finding of no mitigating circumstances and the following aggravating circumstances: (1) conviction of a prior violent felony; (2) the murder was committed to disrupt or hinder the lawful exercise of a governmental function; (3) the murder was especially heinous, atrocious, or cruel; and (4) the murder was cold, calculated, and premeditated.
[2] Koon raises eleven claims in his habeas petition. Because these habeas claims essentially duplicate those raised in the appeal of the 3.850 motion, we do not treat the habeas petition separately in this opinion. However, to the extent that the habeas petition raises claims of ineffective assistance of appellate counsel, we hold that such claims are without merit.
[3] No psychological testing was performed.
[4] Koon did not testify at the evidentiary hearing.
[5] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).