621 So.2d 1368 (1993)
Victor Marcus FARR, Appellant,
v.
STATE of Florida, Appellee.
No. 77925.
Supreme Court of Florida.
June 24, 1993.
Rehearing Denied August 23, 1993.
Nancy A. Daniels, Public Defender and W.C. McLain, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Victor Marcus Farr appeals the sentence of death imposed after his conviction of *1369 first-degree murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
In December 1990, Farr attempted to kidnap and then shot and wounded two women outside a Lake City bar. He attempted to escape by forcibly taking a car in which a man and woman were sitting. The man fled, but Farr managed to crank the car and escape with the woman still inside. When he was pursued by officers later, Farr deliberately accelerated the car into a tree, hoping to kill himself and his hostage. The woman was severely injured in the crash and died of her injuries soon thereafter. Farr was only slightly injured.
After indictment, Farr entered into an agreement with the State in which he pled guilty to all twelve counts of the indictment. As part of the agreement, Farr requested that the state attorney ask for the death penalty. He explained that he wanted to die. After determining that Farr was capable of knowingly and voluntarily entering the plea and that he understood its consequences, the trial court accepted the guilty plea. Farr then knowingly and voluntarily waived his right to a penalty phase jury, and the cause proceeded to sentencing.
At the time of sentencing the record contained a psychiatric report and presentence investigation report containing information about Farr's troubled childhood, numerous suicide attempts, the murder of his mother, psychological disorders resulting in hospitalization, sexual abuse suffered as a child, and his chronic alcoholism and drug abuse, among other matters. In imposing the death penalty, the court apparently was influenced by Farr's decision not to present a case in mitigation. The judge considered in mitigation only Farr's apparent intoxication at the time of the murder, which the court found not to be of mitigating value[1] and ignored the mitigating evidence contained in the presentence report and the psychiatric report.
In aggravation the trial court found that: (1) Farr had previously been convicted of another capital felony or of a felony involving the threat of violence to the person; (2) the homicide was committed while Farr was fleeing from the commission of a kidnapping, a robbery, two attempted kidnappings, and an attempted robbery; (3) the homicide was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws;[2] and (4) the homicide was especially heinous, atrocious, or cruel. Based on these findings, the trial court imposed the death sentence.
On appeal Farr raises three issues. First, Farr argues that our decision in Hamblen v. State, 527 So.2d 800 (Fla. 1988), is inconsistent with our decision in Klokoc v. State, 589 So.2d 219 (Fla. 1991), and that to cure this inconsistency we should recede from Hamblen. We disagree. We have rejected a similar argument elsewhere. E.g., Durocher v. State, 604 So.2d 810 (Fla. 1992).
Second, Farr argues that the trial court was required to consider any evidence of mitigation in the record, including the psychiatric evaluation and presentence investigation. Our law is plain that such a requirement in fact exists. We repeatedly have stated that mitigating evidence must be considered and weighed when contained anywhere in the record, to the extent it is believable and uncontroverted. E.g., Santos v. State, 591 So.2d 160 (Fla. 1991); Campbell v. State, 571 So.2d 415 (Fla. 1990); Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). That requirement applies with no less force when a defendant argues in favor of the death penalty, and even if the defendant asks the court not to consider mitigating evidence.
*1370 As to the third issue, we agree with the trial court's conclusions respecting aggravating circumstances. The four factors cited by the trial court clearly were established beyond a reasonable doubt. However, because the trial court failed to consider all of the available mitigating evidence, the death sentence imposed by the trial court is vacated. On remand, the trial court shall conduct a new penalty phase hearing in which it weighs all available mitigating evidence against the aggravating factors. In this respect, we call to the trial court's attention our holdings in Santos, Campbell, and Rogers. The court then shall determine the proper penalty in accordance with Florida law. In all other respects we affirm the trial court, including the determination of guilt and judgments of conviction.
It is so ordered.
OVERTON, SHAW and KOGAN, JJ., concur.
HARDING, J., concurs with an opinion.
BARKETT, C.J., concurs specially with an opinion.
GRIMES, J., concurs in part and dissents in part with an opinion, in which McDONALD, J., concurs.
HARDING, Justice, concurring.
The issue regarding the trial court's consideration of mitigating circumstances against the defendant's wishes is perplexing and one with which this Court has struggled in the past. In Hamblen v. State, 527 So.2d 800, 802 (Fla. 1988), we identified the issue by saying, "The first issue involves the friction between an individual's right to control his destiny and society's duty to see that executions do not become a vehicle by which a person could commit suicide." In deciding Hamblen the court held that it was not error for the trial court not to appoint counsel against the defendant's wishes to seek out and present mitigating evidence and argue against the death penalty. In doing so we acknowledged:
In the field of criminal law, there is no doubt that "death is different," but, in the final analysis, all competent defendants have a right to control their own destinies. This does not mean that courts of this state can administer the death penalty by default. The rights, responsibilities and procedures set forth in our constitution and statutes have not been suspended simply because the accused invites the possibility of a death sentence. A defendant cannot be executed unless his guilt and the propriety of his sentence have been established according to law.
Id. at 804.
In determining that the propriety of the defendant's sentence has been established according to law, we stated in Pettit v. State, 591 So.2d 618, 620 (Fla. 1992), "that the trial judge must carefully analyze the possible statutory and nonstatutory mitigating factors against the aggravators to assure that death is appropriate." (Emphasis added.)
Here, the record reflects that the trial judge was aware that the psychiatrist's report contained unrefuted evidence of nonstatutory mitigation. There was discussion that specific mitigating factors were found by the doctor in his report.[3] Although the doctor's report here was admitted into evidence solely for the purpose of supporting the competency of the defendant, the trial judge acknowledged his obligation to review all mitigation under Hitchcock.[4] In a dialogue with the trial judge, the defendant stated he had no objection to the judge's reviewing the doctor's report. The trial judge asked for guidance from both counsel for the state and the defendant in regard to his considering the mitigating evidence *1371 contained in the report. Neither counsel responded with guidance. Thereafter there is no indication on the record as to whether the trial judge ever reviewed the report. The sentencing order does not reflect consideration of any mitigation. It is clearly the responsibility of the trial judge to affirmatively show that all possible mitigation has been considered and it is error to fail to do so. In this case it is difficult to rule that the trial judge erred when he considered and did only and exactly what the defendant requested him to do. Yet, we have no alternative under our responsibility to review the record of each case to insure that the propriety of the sentence has been established according to law.
Inasmuch as we have held that we will not reweigh the aggravating and mitigating factors, the appropriate remedy is to remand to the trial judge to reconsider the mitigating factors and reweigh them against the aggravating factors.
BARKETT, Chief Justice, specially concurring.
The record in this case includes substantial mitigating evidence that should have been considered and weighed by the trial judge. For example, the record shows that Farr was sexually abused by a stranger when he was fourteen, he dropped out of school in the seventh grade, and he began drinking alcohol provided by his uncle at age thirteen. He eventually began drinking a case of beer per day and also used marijuana, speed, and cocaine. Farr's mother was chronically depressed, attempted suicide several times, and eventually was murdered by her boyfriend.
Perhaps most significantly, the record details Farr's history of depression, hallucinations, and suicidal tendencies. In fact, the record includes evidence that Farr attempted suicide four times. Given this history, Farr's request for the death penalty and refusal to present mitigating evidence amounts to nothing more than a request for state-aided suicide. See Hamblen v. State, 527 So.2d 800, 806 (Fla. 1988) (Barkett, J., dissenting).
I continue to adhere to the views I expressed in Hamblen that reliability in imposition of the death penalty can be achieved only in the context of a true adversarial proceeding. Id. at 809. Defendants potentially facing the death penalty, therefore, should not be able to "waive" presentation of mitigating evidence. In cases such as Farr's, where the defendant refuses to present mitigating evidence or instructs his or her attorney not to do so, independent public counsel should be appointed to present whatever mitigating factors reasonably can be discovered. It should be the state's independent and informed decision that imposes death and not the decision of a defendant who uses the state as an instrument for suicide.
I concur with the majority that the death sentence in this case should be vacated and a new penalty phase hearing should be conducted for proper weighing of all available mitigating evidence. I would go farther, however, and recede from Hamblen.
GRIMES, Justice, concurring in part, dissenting in part.
I find it difficult to fault the trial judge's handling of Farr's sentencing proceeding. It cannot be said that the judge did not consider Farr's intoxication at the time of the murder because the sentencing order stated:
The Court notes that the Defendant registered a blood alcohol content (BAC) of .20 percent on the evening of the crime but in view of the Defendant's clear memory of the details of the crime, and of the decisions made by the Defendant that evening, the Court finds that this is not a mitigating circumstance, or if it is a mitigating circumstance, it is outweighed by the aggravating circumstances previously enumerated.
No one asked that he consider any other mitigating circumstances as required by Campbell v. State, 571 So.2d 415 (Fla. 1990).
The defendant's confidential psychiatric report was filed by his counsel at the sentencing hearing only so that the record would reflect that Farr was competent to *1372 make the decision not to oppose the death penalty. Because the actual imposition of sentence took place shortly thereafter following a recess, it is not clear whether the judge actually read the psychiatric report. I am convinced, however, beyond a reasonable doubt that such additional mitigating evidence as it may have provided would not have resulted in a different sentence, particularly in light of Farr's explicit explanation of his intent to kill his victim at the time that he kidnapped her.
I would approve the sentence of death as well as the judgment of guilt.
McDONALD, J., concurs.
NOTES
[1] Chronic alcoholism and intoxication at the time of committing the murder is mitigating when established by believable evidence, to the extent the State has not actually controverted the evidence. Nibert v. State, 574 So.2d 1059, 1063 (Fla. 1990).
[2] The trial judge found that the testimony established beyond a reasonable doubt that Farr intended to kill the victim because as Farr stated, "Dead people don't talk."
[3] In addition to the findings regarding mitigating factors, the doctor, in the last paragraph of his report stated:

Though Victor's drinking does not constitute insanity I do think that it constitutes (sic) strong mitigating circumstances which might be useful should this case proceed to the death penalty phase.
[4] Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).